**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                              No. 95-5374

QUINCY FARMER,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                              No. 95-5388

CHARLES ANTHONY BROWN,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                              No. 95-5389

PATRICK LAMAR HARRIS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                              No. 95-5390

KELVIN O'NEIL KENNEDY, a/k/a Buff,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                          No. 95-5391

SHAWN KEITH BUDDEN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                          No. 95-5392

ERIC LEON WALTERS, a/k/a Big E,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                          No. 95-5394

WILLIAM LEE HARPER, a/k/a Billy,
Defendant-Appellant.

Appeals from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, Chief District Judge.
(CR-94-297)

Argued: January 28, 1997

Decided: April 24, 1997

Before HALL, LUTTIG, and WILLIAMS, Circuit Judges.

_____

2

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jack Bruce Swerling, Columbia, South Carolina; John Allen O'Leary, Columbia, South Carolina; Marcia Gail Shein, LAW OFFICES OF MARCIA G. SHEIN, P.C., Atlanta, Georgia, for Appellants. Mark C. Moore, Assistant United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** Timothy E. Meacham, JEBAILY & GLASS, P.A., Florence, South Carolina, for Appellant Farmer; Ernest E. Yarborough, Chester, South Carolina, for Appellant Harris; Wm. Reynolds Williams, WILLCOX, HARDEE, MCLEOD, BUYCK, BAKER & WILLIAMS, Florence, South Carolina, for Appellant Kennedy; Walter W. Brooks, Harry C. Depew, BROOKS LAW FIRM, Columbia, South Carolina, for Appellant Walters. J. Rene Josey, United States Attorney, Jane B. Taylor, Assistant United States Attorney, David J. Slattery, Assistant United States Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants-defendants Quincy Farmer, Charles Anthony Brown, Patrick Harris, Kelvin Kennedy, Shawn Budden, Eric Walters, and William Harper were tried jointly for various drug-related offenses pursuant to a 30-count superseding indictment charging first, that all seven defendants, along with 15 others, conspired to possess and distribute controlled substances, including crack cocaine, in violation of 21 U.S.C. § 846; second, that Brown, Charles Adrian Ford, and James Albert Johnson engaged in a continuing criminal enterprise in viola-

3

tion of 21 U.S.C. § 848; and, third, that various substantive violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 had been committed.

After a seventeen-day trial, the jury returned a verdict on the conspiracy count, acquitting Walters, but convicting Farmer, Brown, Harris, Kennedy, Budden, and Harper. In addition, Brown was acquitted on the continuing criminal enterprise count, and the defendants were acquitted of some, but not all, of the various substantive violations. The defendants now appeal their convictions, alleging a litany of grounds for reversal. Finding all of their claims meritless, we affirm.

I.

The defendants' primary contention is that there was insufficient evidence to support the jury's finding that a single conspiracy existed among all of the defendants, or, at least, that defendants Budden and Brown were part of that single conspiracy.[1] We disagree. The testimony of Charles Adrian Ford and Michael Myers more than amply supports the jury's verdict.

Ford, the government's key witness, formed the "hub" of the drug distribution ring (along with Brown), and utilized defendants Harris, Budden, Harper, Kennedy and Farmer as "spokes" to sell the drugs on the street.

Ford's testimony placed him and Brown at the center of the conspiracy. According to Ford, he and Brown not only obtained drugs

---

[1] The defendants also argue that the district court should have severed the trials of the defendants. The only plausible argument in support of this that they offer is that Budden wanted to call co-defendant Farmer as a witness to rebut another witness' testimony regarding a drug transaction involving both Budden and Farmer. However, the defendants have failed to meet their burden under United States v. Parodi, which requires that they establish: (1) a bona-fide need for Farmer's testimony; (2) the likelihood that Farmer would testify (instead of taking the Fifth Amendment); (3) the substance of Farmer's testimony; and (4) the

exculpatory
nature and effect of Farmer's testimony. 703 F.2d 768, 779 (4th Cir.
1983). Accordingly, we hold that the district court did not err in refusing
to sever the trials.

4

from the same source, J.A. at 258-59, but, in addition, coordinated purchases from that source so they could supply each other with drugs when necessary, J.A. at 259-60. Indeed, over the course of their relationship, Ford supplied Brown with some 5-6 kilos of cocaine, and Brown supplied Ford with about the same amount.

Ford also explained how he and Brown utilized the other defendants to distribute the drugs on the street. Ford did not just sell the drugs to the other defendants, who would then, on their own, sell the drugs on the street. Rather, Ford "fronted" the drugs to these defendants; that is, he gave them the drugs without immediately demanding cash, and he was paid only after they were able to sell the drugs. J.A. at 244. According to Ford, he "fronted" drugs to Kennedy from 50 to 100 times, J.A. at 243-45; to Harris on a bi-monthly basis in 1/4 to 1/2 kilo amounts, J.A. at 272-74; to Harper on a weekly basis in 1/4 kilo amounts, J.A. at 284-85; and to Budden on 10-12 occasions in 1/4 to 1/2 kilo amounts, J.A. at 261-63. Ford also testified that he and Budden were good friends, that the two "were the closest out of anybody on this indictment," J.A. at 263, and that, on several occasions when he sold drugs to Budden, Budden was accompanied by Farmer. J.A. at 265-69.

In addition, the testimony of Myers, another key government witness, provides further support for the jury's verdict. Myers testified to a conversation that he had had with Ford and Brown, at which Budden was also present. According to Myers, he was attempting to purchase drugs from either Ford or Brown when Ford indicated to Myers that he (Ford) would not mind if Myers purchased the drugs from Brown, because they would all be "keep[ing] it in the family." J.A. at 1209-10.

Myers also testified to a drug transaction that involved him, Budden, and Farmer. On December 9, 1993, Myers made three phone calls to Budden, all recorded by police, over the course of which they agreed to meet in order to engage in a drug transaction. J.A. at 1218-19. When Myers arrived at the appointed meeting place, he saw approaching a car which he recognized as Budden's. J.A. at 1222. As

it turns out, Farmer was driving the car, J.A. at 1222-23, and Myers
ended up purchasing drugs from Farmer. J.A. at 1232-34. During the
purchase, Farmer told Myers that he could not offer Myers a dis-

5

counted price on the drugs because the money from the drug transaction belonged not to Farmer, but to Budden. J.A. at 1234.**2**

II.

In addition to their primary claim regarding the existence of the single conspiracy, the defendants raise a host of additional claims,
which we address seriatim.

A.

The defendants contend that they were denied their constitutional right to a fair and impartial jury because one of the jurors was not
impartial. This claim is meritless.

The juror in question was, if anything, impartial in favor of the defendants. According to the jury foreman, who reported the potential
juror bias to the court, the juror in question had stated that she was
"here to prove these people not guilty," Supp. J.A. at 15-16, because
she "had a cousin who was addicted to hairspray" whom she believed to be "a real nice guy." Supp. J.A. at 16.

Moreover, the district court took appropriate steps to satisfy himself that there was no danger of unfair jury bias. The court questioned
the jury foreman <u>in camera</u>, where the foreman told the court that he
had "just talked to [the juror in question] and she'[d] come around."
Supp. J.A. at 15. Although the defendants apparently believe that the
court should have questioned the juror directly in order to ensure that
undue pressure had not been exerted upon her by the other jurors, we
cannot conclude that the court's refusal to do so constitutes error. For,
questioning of the juror by the court would itself have pressured the
juror, perhaps more than any pressure that was brought to bear by the
fellow jurors.

---

**2** This incident is also the basis for Budden's conviction on Count 22,
which charged that he and Farmer "distribute[d] and possess[ed] with
intent to distribute a quantity of cocaine base, . .. and did aid

and abet
each other and others in the commission of the aforesaid offense."
J.A.
at 189-90. We hold, contrary to Budden's contention, that Myers'
testi-
mony provides more than sufficient evidence to support this
conviction.

6

B.

The defendants next argue that the government violated <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963), when it failed timely to disclose to the defendants certain handwritten notes that police officer Moore took during an interview with Ford, which apparently contradicted some of Ford's testimony. We disagree.

The defendants suffered no prejudice from the late disclosure of the notes. Upon learning of the notes, the court immediately ordered the government to disclose them to the defendants. J.A. at 409-10. Furthermore, Ford was the very first witness to be called at trial, and the court permitted the defendants to resume cross-examination of Ford on the following day after having had a chance to review the notes overnight, J.A. at 409-10. It appears that not even the defendants found anything helpful in the notes, as they chose not to cross-examine Ford after having had a chance to review the notes.

C.

Finally, the defendants raise a litany of alleged trial errors, all of which we reject.

First, the defendants argue that the district court should not have admitted certain tape recorded evidence because the recordings were inaudible. The district court, after twice listening to the tapes, and after conducting a hearing on the admissibility of the tapes, concluded,

> [t]hey are very sketchy, there is no question about it. There are a lot of parts to them that you cannot hear. But it seems to me all in all, they give a pretty good idea what was going on, and I don't think that they are misleading. I don't think that they misrepresent the conversation, and I don't think that they are so substantially inaudible as to lose all meaning.

J.A. at 882. As the defendants fail to offer anything that draws into question the district court's judgment, we cannot say the district court erred.

7

Second, the defendants claim that Myers' in-court identification of Farmer was unconstitutionally tainted because, prior to that identification, the police had shown Myers a photograph of Farmer. We disagree. Apart from that photograph, Myers had had personal dealings with Farmer on five to ten occasions. J.A. at 1228. In addition, before the police showed Myers the photograph, he told them that a man named "Quincy" (Farmer's first name) was the person from whom he had purchased the drugs. J.A. at 1230-31.

Third, the defendants argue that they were unfairly prejudiced when the government brought several firearms into the courtroom which were ultimately not admitted into evidence. This claim, too, is meritless. Although the defendants claim that the firearms were before the jury for some 10 to 15 minutes, Appellant's Reply Br. at 3, nothing in the record supports this assertion, see J.A. at 1691-96, and, in fact, the record reflects that, while the weapons were placed just a few feet from the jury, they were there for "roughly two seconds." J.A. at 1722. Moreover, though the district court apparently did not give the jury a limiting instruction (as it had earlier stated that it would do), the defendants did not object, perhaps out of the (reasonable) belief that the instruction would do more harm than good.

Finally, the defendants argue that the disparity in the sentences for crack and powder cocaine violate their rights under the Equal Protection Clause of the Fourteenth Amendment. This argument is foreclosed by our decision in United States v. Thomas, 900 F.2d 37, 39-40 (4th Cir. 1990).[3]

III.

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

_____

[3] To the extent that the defendants argue that the cocaine actually seized was not crack, but powder, cocaine, they have adduced no evidence that the district court erred in this respect.

8